UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL SHAWN H.,

                                    Plaintiff,

v.                                                              6:22-CV-01322
                                                                (DNH/TWD)
COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC             JUSTIN M. GOLDSTEIN, ESQ.
6000 N. Bailey Ave., Suite 1a
Amherst, NY 14226
Counsel for Plaintiff


U.S. SOCIAL SECURITY ADMINISTRATION             FERGUS KAISER, ESQ.
Office of Program Litigation, Office 2
Social Security Administration
6401 Security Boulevard
Baltimore, MD 21235
Counsel for Defendant

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

        Michael Shawn H. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying his request for supplemental security income ("SSI").  (Dkt. No. 1.)

Plaintiff did not consent to the jurisdiction of a Magistrate Judge.  *Id.*; *see also* Dkt. Nos. 4, 7.

The matter was referred to the undersigned for the issuance of a report and recommendation,

pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3.  Both parties filed briefs, which the Court

treats as cross-motions for judgment on the pleadings under Federal Rule of Civil Procedure Rule 12(c) in accordance with General Order 18.  (Dkt. Nos. 11, 15.)  Plaintiff filed a reply brief. (Dkt. No. 16.)  For the reasons set forth below, the Court recommends affirming the Commissioner's decision.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on June 27, 1968.  (Administrative Transcript at 221, 243.)[1]  He completed the eleventh grade and later obtained a GED.  *Id.* at 34.  He has not worked since before 2006.  *Id.* at 35, 229, 245.  On May 19, 2020, Plaintiff filed for SSI alleging disability beginning June 1, 2000, due to spinal injury, herniated disks, "neck," and "toe is dislocated from foot."  *Id.* at 76, 221-27, 253.  He later amended his onset date of disability to May 19, 2020.  *Id.* at 33.  Plaintiff has a history of a traumatic brain injury, attention hyperactivity disorder – paranoid type, schizophrenia, recurrent major depressive disorder, chronic bipolar disorder, cervical and lumbar degenerative disc disease, degenerative joint disease status post left great toe injury and hallux deformities, borderline intellectual functioning, and learning disorder.  *See, e.g., id.* at 679-80.

Plaintiff's application was initially denied on November 9, 2020, and again upon reconsideration on March 10, 2021.  *Id.* at 10, 112-123, 132-145.  At Plaintiff's request, Administrative Law Judge ("ALJ") Alexander Klibaner held a hearing on December 10, 2021. *Id.* at 28-46.  The ALJ heard the testimony of Plaintiff, represented by a licensed hearing representative, and the testimony of vocational expert ("VE") Dale Pasculli.  *Id*.  On December

---

[1]  The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. Citations not made to the Administrative Transcript will use page numbers assigned by the Court's CM/ECF electronic filing system.

28, 2021, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. *Id.* at 10-23. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on October 12, 2022. *Id.* at 1-6. Plaintiff timely commenced this action on December 9, 2022, challenging the Commissioner's decision. (Dkt. No. 1.)

## II.    RELEVANT LEGAL STANDARDS

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's findings must be sustained "even where substantial

evidence may support the plaintiff's positions and despite that the court's independent analysis

of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147,

153 (S.D.N.Y. 1992).  A reviewing court cannot substitute its interpretation of the administrative

record in place of the Commissioner's if the record contains substantial support for the ALJ's

decision.  *See Rutherford*, 685 F.2d at 62.

### B.  Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability benefits must establish he or she

is unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death, or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

423(d)(1)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § (d)(2)(A).

---

[2]  While the SSI program has special economic eligibility requirements, the requirements for
establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d)
are identical, so "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of
Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

4

The Social Security Administration regulations outline a five-step process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)); 20 C.F.R. §§ 404.1520(a)(4)(i) -(v), 416.920(a)(4)(i)-(v)).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).  If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working.  *Id*.

### C.  Standards for ALJ Evaluation of Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings ("SSR"), including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of*

---

[3] Plaintiff's application was dated May 19, 2020.  (T. at 76, 221-227.)  Thus, the new regulations apply in his case.

*Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions."  *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" forming the foundation of the treating source rule.  *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2).  With respect to "supportability," the new regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1).  The regulations provide with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. (T. at 10-23.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date. *Id.* at 12. Proceeding to step two, the ALJ determined Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease, degenerative joint disease status post left great toe injury and hallux deformities, bipolar disorder, adjustment disorder, attention deficit hyperactivity disorder, borderline intellectual functioning, learning disorder, and drug and alcohol abuse disorder. *Id*. At step three of the sequential evaluation, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. *Id.* at 14. Thereafter, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except he can frequently climb ramps and stairs but never ladders, ropes, or scaffolds. He can occasionally balance on narrow or slippery surfaces. He can occasionally stoop, kneel, crouch, and crawl. He can tolerate occasional exposure to extreme cold, to vibration (such as a jackhammer and power tools) and to workplace hazards (such as unprotected heights and hazardous machinery). He is able to remember, understand, and carry out simple, routine tasks, defined to include unskilled tasks that take no more than a month to learn the techniques, acquire the information, and develop the facility

> needed for average performance of those tasks.  He can carry out those tasks for 2-hour periods throughout a 40-hour workweek.  He is able to make simple work-related decisions.  He can tolerate occasional interactions with coworkers and the general public.  He can tolerate occasional, simple changes in the work routine.  He cannot work at an externally set production-rate pace, such as an assembly line.

*Id*. at 16.

In making the RFC determination, the ALJ considered all of Plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§] 416.929 and [Social Security Ruling] 16-3p." *Id*.  The ALJ further stated he considered opinion evidence and prior administrative medical findings pursuant to 20 C.F.R. § 416.920(c).  *Id*.  The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  *Id.* at 17.

Proceeding to step four of the sequential evaluation, the ALJ determined Plaintiff has no past relevant work.  *Id.* at 22.  At step five, the ALJ evaluated the VE testimony and in considering Plaintiff's age, education, work experience, and RFC, found Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" such as housekeeping cleaner, routing clerk, and a photocopying machine operator.  *Id.* at 22-23.  Accordingly, the ALJ determined Plaintiff was not disabled, as defined in the Social Security Act, from the alleged onset date through the date of his decision.  *Id*. at 23.

## IV.    DISCUSSION

Plaintiff contends the Commissioner's decision is tainted by legal error and is not

supported by substantial evidence.  (*See, generally* Dkt. Nos. 11, 16.)  Specifically, Plaintiff

claims the ALJ failed to identify substantial evidence supporting the RFC and failed to evaluate

the medical opinions pursuant to the regulations.  (Dkt. No. 11 at 10-25; Dkt. No. 16 at 1-8.)  In

response, Defendant asserts the ALJ's decision denying benefits applies the correct legal

standards and is supported by substantial evidence.  (Dkt. No. 15 at 7-15.)

The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations."

20 C.F.R. § 404.1545(a)(1), 416.945(a)(1).  This determination is based on the entire record,

which includes relevant evidence such as the claimant's own description of their limitations,

observations made by treating and examining physicians or psychologists, statements from

family members, neighbors, or friends, as well as medical records.  20 C.F.R. §§ 404.1545(a)-(c)

and 416.945(a)-(c).  When assessing an RFC, the ALJ must consider the total limiting effect of

the claimant's impairments and related symptoms.  20 C.F.R. §§ 404.1545(e) and 416.945(e).

It is the province of the ALJ to resolve genuine conflicts in the record.  *Veino v.

Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  However, the Commissioner need not "reconcile

explicitly every shred of medical testimony."  *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir.

2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved

conflicts between the various medical opinions by rendering the most value to those portions of

the medical opinions deemed most consistent with Plaintiff's overall treatment records and

activities.  In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and

made an RFC finding consistent with the overall record.  *See Matta v. Astrue*, 508 F. App'x. 53,

56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the

opinions of medical sources, ALJ was entitled to weigh all the evidence available to make an RFC finding consistent with the record as a whole).  Considering the ALJ's detailed analysis of Plaintiff's medical history and treatment, the relevant medical opinions, Plaintiff's testimony, and his reported activities of daily living, the Court concludes the RFC determination was supported by substantial evidence, as summarized below.

In a nutshell, Plaintiff argues the ALJ erred in assessing the opinions of Physician Assistant ("PA") Jennifer Weaver, state agency reviewer Dr. J. Lawrence, and consultative examiners Dr. Justine Magurno and Dr. Sara Long.  (Dkt. Nos. 11, 16.)  For the reasons that follow, the Court finds the ALJ properly assessed the medical opinions, and the RFC was supported by substantial evidence.

### A.  The ALJ Reasonably Found Dr. Lawrence's Opinion to be Partially Persuasive

State agency reviewer, Dr. Lawrence, performed an analysis of the record evidence on March 8, 2021.  (T. at 96-100.)  He evaluated Plaintiff's postural and exertional limitations and opined Plaintiff could occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; stand and/or walk with normal breaks for about six hours in an eight-hour workday; and push and/or pull "unlimited," subject to Plaintiff's limitations for lifting and/or carrying.  *Id.* at 98-99. Upon reviewing the evidence of record, Dr. Lawrence concluded Plaintiff could perform a range of light work; frequently climb stairs/ramps, balance, stoop, kneel, crouch, crawl; and occasionally climb ladders/ropes/scaffolds.  *Id.* at 99-100.

Here, the ALJ reasonably found the opinion of Dr. Lawrence to be partially persuasive. The ALJ stated Dr. Lawrence's opinion was partially persuasive because it was consistent with (1) objective clinical findings on physical examinations showing no significant focal neurological deficits, a normal gait, and no muscle atrophy; (2) objective imaging consistent with only moderate cervical disc space narrowing and unremarkable objective imaging of the lumbar

spine; and (3) evidence of inconsistent treatment for his musculoskeletal impairments. *Id.* at 20. Indeed, numerous physical exams repeatedly show normal musculoskeletal range of motion, including in his neck and back; a normal gait; and no tenderness to palpation. *Id.* at 405, 408, 410, 412, 415, 417, 423, 440, 452, 457, 485, 519, 573-74, 578, 634, 774-75, 855, 868, 904, 909, 921. As noted by the ALJ, x-rays from February 19, 2021, revealed moderate disc space narrowing in the cervical spine and no lumbar spine issues. *Id.* at 18; *see also id.* at 777-78.

As specific examples, on September 7, 2020, Plaintiff displayed normal gait, coordination, and range of motion, and no neurological or sensory deficits or weakness. *Id.* at 574. Medical records from September 24, 2020, showed Plaintiff's physical appearance as "normal" and there were no changes in his range of motion and mental status. *Id.* at 578. On January 21, 2021, it was noted Plaintiff's gait was normal with normal movement in all extremities, and no neurological deficits were present. *Id.* at 855. Similarly, on July 21, 2021, and August 18, 2021, his gait and station were noted to be normal. *Id.* at 904. On September 10, 2021, Plaintiff's musculoskeletal findings were "general: normal range of motion," and a "normal range of motion" in his cervical spine. *Id.* at 921.

Dr. Lawrence noted Plaintiff reported experiencing shooting pain up his left side all the time when moving during the day and at night. *Id.* at 100. Plaintiff also reported having problems with lifting, walking, sitting, climbing stairs, kneeling, and squatting. *Id.* Accordingly, the ALJ found Dr. Lawrence's opinion that Plaintiff could occasionally climb ladders, ropes, or scaffolds, and frequently balance, stoop, kneel, crouch, and crawl was inconsistent with Plaintiff's reports. *Id.* at 20.

Thus, Plaintiff's argument the ALJ improperly evaluated Dr. Lawrence's opinion is without merit. (Dkt. No. 11 at 24-26.) As noted above and in accordance with the regulations,

the ALJ was required to explain how he considered the supportability and consistency factors of a medical source's opinions or prior administrative medical findings in the decision.  20 C.F.R. §§ 404.1520(c)(b)(2), 416.920c(b)(2)).  The ALJ did that here and the RFC is supported by substantial evidence.  *See Christina M. v. Saul*, No. 3:18-cv-00332 (CFH), 2019 WL 3321891, at *6 (N.D.N.Y. July 24, 2019) (explaining that it is "within the ALJ's purview to rely on the opinion" of a state agency physician who reviewed the evidence); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (opinion of consultative examiner may constitute substantial evidence to support an ALJ's decision).  The ALJ cited to specific record evidence of Plaintiff's numerous normal physical exam findings and accounted for Plaintiff's reports of his physical abilities.

### B.  The ALJ Reasonably Found Dr. Magurno's Opinion to be Less Persuasive

Dr. Magurno performed a consultative examination of Plaintiff on February 19, 2021. (T. at 772.)  Plaintiff complained of two cracked lumbar discs, nerve damage on his left side, and bulging discs.  *Id.*  He described the intensity of his pain as "always 10/10" ever since a motor vehicle accident in 2000.  *Id.*  Additionally, Plaintiff reported having seizures dating back to his accident, with the last one being a year before Dr. Magurno's consultative exam.  *Id.*

Upon reviewing Plaintiff's history and conducting a physical examination, Dr. Magurno concluded Plaintiff had moderate to marked limitations in walking, standing, bending, lifting, and carrying; moderate limitations for pushing and pulling; and mild limitations in reaching.  *Id.* at 776.  However, on exam, Plaintiff exhibited minor decreased range of motion and tenderness in his cervical and lumbar spine areas.  *Id.* at 775.  Straight leg raising was negative.  *Id.*  He had full range of motion in his extremities and his joints were stable.  *Id.*  His strength was 4/5 in all extremities, and he did not have any muscle atrophy.  *Id.*  Deep tendon reflexes were equal in all extremities, but he had some decreased sensation in his left great and second toes.  *Id.*  His hand and finger dexterity were intact, and his grip strength was 4/5.  *Id.*  He required no assistance

changing for the exam or getting on or off the exam table. *Id.* at 774. He could walk on his heels normally and did not need an assistive device. *Id.*

Here, the ALJ reasonably found Dr. Magurno's opinion to be less persuasive because it was inconsistent with and not supported by the medical evidence of record. *Id.* at 21. As noted above, numerous physical examinations of Plaintiff during the relevant time showed normal musculoskeletal range of motion, normal gait, normal range of motion in his neck and back, and only some occasional tenderness without swelling. *Id.* at 405, 408, 410, 412, 415, 417, 423, 440, 452, 457, 485, 519, 573-74, 578, 634, 774-75, 855, 868, 904, 909, 921. The ALJ considered these objective clinical findings on physical examinations, noting Plaintiff had an effective gait with no medically documented need for an assistive device, as well as no significant neurological deficits throughout Plaintiff's upper and lower extremities bilaterally. *Id.* at 21.

The ALJ also noted Dr. Magurno's limitations were inconsistent with Plaintiff's activities of daily living. *Id.* Plaintiff reported to Dr. Magurno that he cooked daily, while others helped him clean. *Id.* at 773. He also did his laundry and shopped. *Id.* In his function report, Plaintiff indicated he did not need help with household chores. *Id.* at 265-66. The ALJ's evaluation of Dr. Magurno's opinion considered the supportability and consistency factors as required, and the Court finds no error in his determination that it was less persuasive.

### C. The ALJ Reasonably Found Dr. Long's Opinion to be Partially Persuasive

Plaintiff contends the ALJ failed to properly incorporate the persuasive portions of Dr. Long's opinion into the RFC finding. (Dkt. No. 11 at 19.) The ALJ found Dr. Long's opinion that Plaintiff had "moderate limitations in short-term memory" to be persuasive. (T. at 21.) Plaintiff claims the RFC does not address issues with memory. (Dkt. No. 11 at 20.) However, this claim is contrary to the RFC. The ALJ explicitly imposed mental limitations on Plaintiff in

the RFC, restricting him to simple, routine tasks that can be learned in a month or less.  (T. at 16.)  Additionally, the Plaintiff was not allowed to engage in work that required a production-rate pace, such as assembly line work.  *Id.*; s*ee John D. v. Comm'r of Soc. Sec.*, No. 3:18-cv-75 (TWD), 2019 WL 6877974, at *6 (N.D.N.Y. Dec. 17, 2019) (affirming ALJ's decision where the ALJ limited the plaintiff to "unskilled work not involving production pace to address any memory and concentration deficits"); *see also Cromeans v. Comm'r of Soc. Sec.*, No. 19-cv-446 2020 WL 3035849, at *5 (W.D.N.Y. June 5, 2020) (affirming ALJ's decision where the "ALJ restricted [the plaintiff] to performing only simple, routine work because she reported difficulty with memory and concentration").  Moreover, mental status exams of Plaintiff within the relevant time note that Plaintiff has normal recent and remote memory, and he was able to focus on relevant topics.  (T. at 440, 643, 664, 666, 686, 706, 716, 735.)

The ALJ specifically noted the "objective clinical findings on mental status examinations showing adequate cooperation with his treatment providers as well as his ability to tolerate public places."  *Id.* at 21.  For example, most of Plaintiff's mental status exams showed him to have a normal mood and affect, normal behavior, normal judgment and thought content, and he was not nervous or anxious.  *Id.* at 369, 393, 405, 408, 412, 415, 417, 423, 440, 446, 452, 457, 472, 468, 515, 520, 574, 578, 582, 859, 878.

It is clear the ALJ considered all the treatment records and other evidence of record. Contrary to Plaintiff's assertions, the ALJ's decision cited to relevant medical evidence, as well as Plaintiff's own testimony as to his abilities, in support of his decision.  *Id.* at 17-22.  Plaintiff acknowledged he fixed or prepared simple meals a "couple [of] times a day" in a function report dated June 29, 2020.  *Id.* at 265.  He shopped by mail or computer, although it took him "a long time."  *Id.* at 266.  He reported he could handle money and count change.  *Id.* at 271.  He

acknowledged he could follow written and spoken instructions. *Id.* at 274. He reported he had

no trouble remembering things. *Id.* Plaintiff essentially asks the Court to re-weigh the record

evidence, but "[i]t is not the function of the Court to re-weigh evidence on appeal from a

decision of the Commissioner, but rather to determine whether substantial evidence supports the

Commissioner's decision." *Walsh on behalf of S.J.W. v. Comm'r of Soc. Sec.*, No. 1:16-CV-

1413 (GTS/WBC), 2018 WL 1229827, at *5 (N.D.N.Y. Mar. 9, 2018). Accordingly, the Court

finds the ALJ properly addressed the "most important" factors of consistency and supportability

regarding the opinion of Dr. Long and substantial evidence supports the ALJ's findings. *See* 20

C.F.R. §§ 404.1520c(c)(3), (4); 416.920c(c)(3), (4).

### D. The ALJ Reasonably Found PA Weaver's Opinion to be Unpersuasive

Plaintiff contends the ALJ failed to reference or apply the supportability factor when

summarizing or evaluating the opinion of PA Weaver because "the ALJ's rationales are

inconsistent with the regulations and unsupported by the factual records." (Dkt. No. 11 at 11.)

The Court disagrees.

As discussed above, SSA regulations require an ALJ to consider several factors when

evaluating the medical opinion evidence in the record, "most importantly, the 'supportability'

and 'consistency' of each submitted opinion." *Velasquez v. Kijakazi*, No. 19-CV-9303, 2021

WL 4392986, at *25 (S.D.N.Y. 2021). An ALJ must "specifically" explain "how well a medical

source supports their own opinion(s) and how consistent a medical source/opinion is with the

medical evidence as a whole." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021

WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom.*

*Cuevas v. Comm'r of Soc. Sec.*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).

PA Weaver partially completed a medical source statement on November 22, 2021. (T.

at 941-45.)  She opined Plaintiff was "incapable of [performing] even 'low stress' jobs . . . due to underlying psychological conditions" and had "physical limitations due to chronic back pain." *Id.* at 945.  PA Weaver declined to opine on any of Plaintiff's specific functional limitations even though the form provided space for her to assess levels of limitation in specific areas of functioning such as the abilities to "remember work-like procedures" or "sustain an ordinary routine without special supervision."  *See id.* at 943.

Here, the ALJ found PA Weaver's opinion "unpersuasive because it is inconsistent with the objective and subjective evidence" in determining Plaintiff had the RFC to perform light work with some exceptions including never climbing ladders, ropes, or scaffolds.  *Id.* at 21; *see also id.* at 16.  First, the ALJ considered other medical opinions in the record and explained how he applied the supportability and consistency factors to these opinions.  *Id.* at 20-21.  Second, regarding consistency, the ALJ pointed out that PA Weaver's opinion appeared "inconsistent with evidence of multiple significant personal relationships with family and friends [and] objective clinical findings on mental status examinations showing adequate cooperation with his treatment providers as well as his ability to tolerate public places."  *Id.* at 21.

Plaintiff argues his case should be remanded because the ALJ did not consider PA Weaver's treatment notes elsewhere in the record and as such the supportability factor was not satisfied.  (Dkt. No. 11 at 13).  This argument is unavailing because the Second Circuit instructs that an ALJ is not required to discuss all evidence to show that he considered it.  *See Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  "Just as importantly, the mere fact that a specific portion of evidence is not *discussed* in a decision does not mean that it was not *considered*."  *Strange v. Comm'r of Soc. Sec.*, No. 6:13-cv-527, 2014 WL 4637093, at *9 (N.D.N.Y. Sept. 16, 2014) (emphasis in original) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th

Cir. 1998)).  Additionally, as set forth below, the treatment notes of PA Weaver and others in her practice group do not support Plaintiff's claims.

Plaintiff also argues the ALJ erred by not considering PA Weaver's treatment relationship as evidence of supportability.  (Dkt. No. 11 at 13.)  Notwithstanding Plaintiff's treatment relationship, substantial evidence supports the ALJ's finding that PA Weaver's opinion is unpersuasive.  *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) ("a medical opinion may be given significant weight only if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'") (citing 20 C.F.R. § 404.1527(d)(2)).  Moreover, Courts conducting judicial review in social security cases do not require perfect opinions or rigid, mechanical, formulaic applications of administratively prescribed evaluative protocols.  *See Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013) (declining to adopt a *per se* rule that failure to conduct a prescribed function-by-function analysis of residual functional capacity is grounds for remand).

In PA Weaver's November 22, 2021, opinion, she described Plaintiff's work conditions would "exacerbate underlying chronic medical/psychological conditions [and] physical limitations due to chronic back pain and social limitations due to mental health conditions."  (T. at 941.)  PA Weaver's assessment was unsupported by her own clinical findings and the findings of other providers within the same healthcare system, Bassett Healthcare Network ("Bassett"). For example, mental status exams when Plaintiff was treated at Bassett by PA Weaver and others routinely noted him to have a normal mood and affect; his behavior, judgment, and thought content were normal; he was alert and oriented in all spheres; his speech was normal; and his memory was intact.  *See, e.g., id.* at 405, 412, 415, 417, 423, 440, 452, 457, 515, 520, 574, 578, 582, 586.  His behavior was noted to be negative for agitation, dysphoric mood, hallucinations,

and self-injury; he was not nervous or anxious; his thought process was linear, coherent, and goal directed. *Id.* at 446, 478; *see also id.* at 369, 386, 393, 875, 878, 882, 885, 889, 894.

Moreover, PA Weaver's vague opinion that Plaintiff had "physical limitations due to chronic back pain" is inconsistent with the record evidence, including many of her own treatment notes, and the notes of other providers at Bassett. To illustrate, most physical examinations of Plaintiff by Bassett providers showed normal musculoskeletal range of motion, normal gait, normal range of motion in his neck and back, and only some occasional tenderness without swelling. *Id.* at 405, 408, 410, 412, 415, 417, 423, 440, 452, 457, 485, 519, 573-74, 578, 634.

The ALJ further discussed Plaintiff's activities of daily living in his evaluation of the record evidence. *Id.* at 17, 21. For example, at the hearing, Plaintiff testified he does puzzles, watches television, and talks on the phone. *Id.* at 36-38. In his function report, Plaintiff indicated he did not need help with household chores. *Id.* at 265-66. He reported to Dr. Magurno that he does cooking daily, shopping when possible, showering and dressing daily, and has others help him clean. *Id.* at 773. As such, the ALJ's decision as a whole reflects a broader consideration of the medical and record evidence and his assessment of PA Weaver's opinion being unpersuasive was appropriate.

Plaintiff argues the ALJ's RFC determination was the product of the ALJ's lay judgment and not supported by substantial evidence. (Dkt. No. 11 at 22-23). The Court finds no merit in that assertion. A claimant's RFC is the most he or she can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v.*

*Apfel*, 198 F.3d 45 52 (2d Cir. 1999)).

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). It is the ALJ, and not a medical source, who is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c); *Shyla D. v. Kijakazi*, No. 3:20-CV-1295 (DJS), 2022 WL 798158, at *5 (N.D.N.Y. Mar. 16, 2022) ("[T]he RFC is an administrative finding reserved to the Commissioner and not a medical finding.") (citation omitted); *Breinin v. Colvin*, No. 5:14-CV-01166 (LEK/TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion."), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015).

Here, the ALJ considered Plaintiff's physical and mental abilities and symptomology, and then crafted a specific RFC that is supported by the medical treatment evidence and Plaintiff's own statements. Based upon a careful review of the record, the Court finds the ALJ properly assessed the medical evidence and opinions, considered Plaintiff's activities, and accounted for the record as a whole in determining Plaintiff's RFC. Accordingly, the Court finds no error and remand is not necessary.

## V.    CONCLUSION

Considering the foregoing, the Court finds the ALJ applied the correct legal standards and substantial evidence supports his decision.  Remand is therefore not warranted.

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be **DENIED**; and it is further

**RECOMMENDED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) be **GRANTED**; and it is further

**RECOMMENDED** that the Commissioner's decision denying Plaintiff benefits be **AFFIRMED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  __FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW__.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  March 1, 2024
       Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge